IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| **BRANDON MOORE, #241446** | ) |
| | ) |
| Plaintiff(s), | ) |
| | ) |
| v. | ) |
| | ) 2:06-CV-75-WHA |
| **JAMES DELOACH, ET AL.** | ) |
| | ) |
| Defendant(s). | ) |

## SPECIAL REPORT

COME NOW the Defendants, **James DeLoach, Willie Whiting, Donal Campbell and Bob Riley,** by and through undersigned counsel, and in accordance with this Honorable Court's January 30, 2006 Order, offer the following written report.

## PARTIES

1. The Plaintiff, Brandon Moore, is an inmate currently housed at Draper Correctional Facility (DCF).

2. James DeLoach is currently employed by the Alabama Department of Corrections (ADOC) at DCF as a Warden III.

3. Willie Whiting is currently employed by ADOC as a Chaplin at DCF.

4. Defendant Bob Riley is Governor of the State of Alabama.

5. Defendant Donal Campbell[1] is the former Commissioner of the Alabama Department of Corrections.

---

[1] Richard Allen is now the Commissioner of the Department of Corrections.

1

## EXHIBITS

1. Exhibit 1 – Affidavit of Willie Whiting

2. Exhibit 2 – Affidavit of James DeLoach

## PLAINTIFF'S CLAIMS

Plaintiff alleges that on January 9, 2006 at 3:30 p.m. he attempted to return a library book and study his Bible at the Draper library which is located within the multi-purpose building. (C-4, 5) Michael Matthews allegedly ejected Plaintiff from the library area by grabbing Plaintiff by his arm and the back of his neck and shoving him down the hallway headfirst into the wire glass window of the multi-purpose building door causing a laceration on his head and subsequent headaches. Matthews was allegedly cursing and Plaintiff alleges he was not allowed to see a doctor for this injury. (C-5) Defendant Lawrence Shanky (not an ADOC employee and not served with a summons and complaint) allegedly watched Matthews assault Plaintiff and failed "to report or help the plaintiff" and Defendant Shanky was under the supervision of Defendant Willie Whiting. (C-4)

Defendant Warden DeLoach is accused of having "Ordered Officers to keeps cellblocks, yard, and Multi-Purpose Building locked down, and give 1230 inmates packed in space for only 600 inmates 5-minutes movements to come-and-go policy builds tension between inmates and staff and inmates to inmates, and to isolate these same areas that witnesses be few to none of incidents occurring after movement time ended." (sic – whole paragraph) (C - 5-6))

Defendant Governor Bob Riley allegedly ordered on September 27, 2005, "all inmates convicted of murder, manslaughter, or criminally negligent homicide be retuned

2

to the knowingly already overcrowded level-4, First Offender's Prison Facilities, especially DCC." (C-3)

Defendant Donal Campbell is simply alleged to be the Commissioner of Corrections. (C-3,4)

Plaintiff alleges constitutional violations of due process and freedom from cruel and unusual punishment. He alleges that the Defendants' actions violated regulations concerning the use of force and a State cause of action of assault and battery.

## DEFENDANTS' RESPONSE

1. The Defendants deny that they violated the Plaintiff's constitutional rights.
2. The Defendants deny each and every material allegation not specifically admitted herein and demand strict proof thereof.
3. The Plaintiff has failed to state a claim upon which relief may be granted.
4. The Defendants are immune from suit under the Eleventh Amendment to the United States Constitution.
5. The Defendants are immune from suit due to qualified immunity.
6. The Defendants are immune to liability pursuant to Section 14 of the Constitution of Alabama of 1901.
7. The Defendants are entitled to state discretionary immunity.
8. The Defendants cannot be held liable under the theory of respondeat superior.

## STATEMENT OF FACTS

On January 9, 2006, Officer Michael Matthews (not a served Defendant) was assigned to the multi-purpose building in which the Draper Law Library is located. (Ex. 2, Pg. 3) At approximately 3:00 p.m., Brandon Moore entered the multi-purpose building

and was asked by Officer Matthews whether he had signed up for the Law Library (Ex. 2, Pg. 3) Inmate Moore said "No" and Officer Matthews ordered him to exit the multi-purpose building. (Ex. 2, Pg. 3)  Inmate Moore replied to Office Matthews, "I'm not going no damn where." (Ex 2, Pg. 3) Officer Matthews placed inmate Moore in the escort position by grasping inmate Moore's left arm in an attempt to escort Moore out of the building. (Ex. 2, Pg. 3)  When Moore approached the door he raised his fist and hit the glass in the door causing the glass to break and fall resulting in the window causing a cut on inmate Moore's forehead. (Ex. 2, Pg. 3)  Officer Matthews reported this incident to the second shift supervisor and Officer Weaver escorted inmate Moore to the Staton Health Care Unit where he was treated by Nurse Arant for a .5 centimeter (.2 inch) laceration to the head and a scrape on the hand. (Ex. 2, Pg. 3, 5)  Inmate Moore has not requested a doctor for any reason since January 9, 2006.

The policy of the Warden concerning lockdowns and controlled inmates are security measures that are in place to insure the safety of staff and inmates. (Ex. 2, Pg. 2)

Defendant Willie Whiting is the Chaplain at DCF and has no personal knowledge of the January 9, 2006 incident. (Ex. 1, Pg. 1)

**SUMMARY JUDGMENT STANDARD**

Summary judgment may be granted only if there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56  In making that assessment, the court must view the evidence in a light most favorable to the non-moving party and must draw all reasonable inferences against the moving party. *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).  The burden of proof is upon the moving party to establish his prima facie entitlement to summary judgment by showing the

absence of genuine issues and that he is due to prevail as a matter of law. *See Clark & Clark, Inc.*, 929 F.2d 604 (11th Cir. 1991). Once that initial burden has been carried, however, the non-moving party may not merely rest upon his pleading, but must come forward with evidence supporting each essential element of his claim. *See Celotex Corp v. Catrett*, 477 U.S. 317 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986); *Barfield v. Brierton*, 883 F.2d 923 (11th Cir. 1989). Unless the plaintiff, who carries the ultimate burden of proving his action, is able to show some evidence with respect to each element of his claim, all other issues of facts become immaterial and the moving party is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317 (1986); *Bennett v. Parker*, 898 F.2d 1530 (11th Cir. 1990). As the Eleventh Circuit has explained:

> Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. "In such a situation, there can be 'no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial." [Citation omitted]. Thus, under such circumstances, the public official is entitled to judgment as a matter of law, because the plaintiff has failed to carry the burden of proof. This rule facilitates the dismissal of factually unsupported claims prior to trial.

898 F.2d at 1532.

## ARGUMENT

**I. Moore has not stated sufficient injury to state a claim of excessive force.**

Claims of excessive force against inmates are governed by the Eighth Amendment's proscription of cruel and unusual punishment. *Campbell v. Sikes*, 169 F.3d 1353, 1374 (11th Cir. 1999). To establish an Eighth Amendment claim of excessive force, the plaintiff must prove that "'`force was applied … maliciously and sadistically for the very purpose of causing harm.'" *Id*. (quoting *Whitley v. Albers*, 475 U.S. 312,

5

320-21 (1986). The "core judicial inquiry" in such a claim is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson v. McMillian*, 503 U.S. 1, 7 (1992).

In addition to defining the mental state required, *Hudson* and *Whitley* outline five distinct factors relevant to ascertaining whether force was used " maliciously and sadistically for the very purpose of causing harm"; (1) "the extent of the injury"; (2) "the need for application of force"; (3) "the relationship between that need and the amount of force used"; (4) "any efforts made to temper the severity of a forceful response"; and (5) "the extent of the threat to the safety of the staff and inmates, as reasonably perceived by the responsible officials on the basis of facts known to them." *Campbell*, 169 F.3d at 1375 (citing *Whitley*, 475 U.S. at 321; *Hudson*, 503 U.S. at 7).

Moore's injuries were minimal ones upon which he cannot base a claim. To state a claim, an inmate's injuries need not be significant, but must be more than de minimus. *Harris v. Garner*, 190 F.3d 1279, 1287 (11th Cir. 1999); modified in part by *Harris v. Garner*, 216 F. 3d 970 (11th Cir. 2000). Also, as stated in 42 U.S.C. § 1997e(e), "no federal civil action may be brought by a prisoner confined in a jail, prison or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." To satisfy the injury requirement, an inmate need not show permanent injury, but must "offer some evidence of injury beyond a minimal one." *Bennett v. Parker,* 898 F.2d 1530, 1533 (11th Cir. 1990).

In the instant case, the Plaintiff's injury is a self-inflicted .5 centimeter laceration, which when rounded up converts in the English system to about a .2 inch cut. Plaintiff's injury did not require a stitch or even a band-aid.

Injuries more severe than this have consistently been found not sufficiently serious to state an Eighth Amendment claim. *Bennett,* 898 F2d. at 1533 (inmate's allegation of being struck in the head with a night stick did not state sufficient injury); *Brown. v. Smith*, 813 F.2d 1187 (11th Cir. 1987) (inmate's allegation he was pinned against a wall by the neck with a riot baton did not state sufficient injury); *Williams v. Cash*, 836 F.2d 1318 (11th Cir. 1986) (inmate's allegation of broken elbow insufficient); *Perry v. Thompson*, 786 F.2d 1093 (11th Cir. 1986) (inmate's allegations of bleeding after being struck in head, face, arms, legs, and side insufficient); *Siglar v. Hightower*, 112 F. 3d 191 (5th Cir. 1997) (sore ear lasting three days insufficient); *Lassan v. City of Orange Beach*, 2000 W.L. 1844683 (S.D. Ala. 2000) (broken bone and digestive problems insufficient). Because Moore's injuries are minimal, he has not stated an Eighth Amendment claim and the defendants are entitled to summary judgment. It should be noted that the person who allegedly applied the force has not been served with a summons and complaint. There are no allegations that any of the other ADOC defendants were in any way involved or witnessed the application of force.

**II. Defendants are entitled to immunity**

To the extent that the defendants are sued in their official capacities as state officers, are entitled to Eleventh Amendment immunity. The Eleventh Amendment provides that "[t]he judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by citizens of another state, or by citizens or subjects of any foreign state." The Amendment not only bars suits against a state by citizens of another state, but it also bars suits against a state by that state's own citizens. See *Edelman v. Jordan*, 415 U.S. at 663, 94 S. Ct at

1347 and *Hans v. Louisiana*, 134 U.S. 1, 13-15, 10 S. Ct. 504, 33 L.Ed. 842 (1890). Lawsuits that attempt to sue state officials in their official capacities are considered suits against the state, thereby invoking Eleventh Amendment immunity. *See Welch v. Laney*, 57 F.3d 1004 (11th Cir. 1995); *Robinson v. Phyfer*, 906 F. Supp. 637 (M.D. Ala. 1995); *Sanders v. Miller*, 837 F. Supp. 1106 (N.D. Ala. 1992). Therefore, if the Plaintiff is attempting to state a claim against the Defendants in their official capacities, such a claim would be barred by the Eleventh Amendment.

To the extent that the Defendants are sued in their individual capacities, they should be entitled to qualified immunity. The basic test for qualified immunity was stated in *Harlow v. Fitzgerald*, 457 U.S. 800 (1982): "[G]overnment officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate "clearly established" statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818. In the case of *Hope v. Pelzer,* 536 U.S. 730, 739 (2002), the Supreme Court stated, "[f]or a constitutional right to be clearly established, its contours must be sufficiently clear that a reasonable official would understand that what he is doing violates that right. This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, … but it is to say that in light of pre-existing law the unlawfulness must be apparent." (citations omitted.) Qualified immunity bars claims "so long as [the defendants'] actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Further, qualified immunity is not just a bar to damages, it is a bar to suit. *See Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). Even allegations of animus by

the state actor against the plaintiff are not sufficient to overcome the presumption of qualified immunity. *See Hansen v. Soldenwagner*, 19 F.3d 573, 578 (11th Cir. 1994) ("For qualified immunity purposes, the subjective motivation of the defendant-official is immaterial").

The justification for qualified immunity is essentially that such immunity is necessary in order for the government to effectively function. If not for the protections immunity provides, state officials could be subject to suit for every move they make. This would not only hinder the employment of state officials in the first place, it would have a serious chilling effect on the ability of such officials to do their jobs. In sum, state and other public officials should be allowed to exercise discretion in the performance of their duties without fear of a lawsuit around every corner. *Mitchell*, 472 U.S. at 525-26; *see also Hunter v. Bryant*, 502 U.S. 224 (1991); *Burrell v. Bd. of Trustees of Ga. Military College*, 970 F.2d 785, 794 (11th Cir. 1992), *cert. denied*, 507 U.S. 1018 (1993).

**III. The assault and battery claim is due to fail.**

Defendants Campbell, Riley, DeLoach and Whiting were not even present when Plaintiff suffered his injury. Inasmuch as Plaintiff claims these Defendants assaulted him, Alabama does not recognize the tort of vicarious assault.

**IV. Plaintiff can not hold the defendants liable under the concept of respondeat superior.**

Presumably, Plaintiff's claim against Commissioner Campbell, Governor Riley, Warden DeLoach and Chaplin Willie Whiting is an attempt to hold them responsible through the concept of respondeat superior which is not available to a plaintiff under § 1983. *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). Absent some allegation that these Defendants knew of, sanctioned, participated in, or

were otherwise "affirmatively linked" to the acts here complained of, the complaint is insufficient to state a cause of action under 42 U.S.C. § 1983. *See Gilmere v. City of Atlanta, Ga.*, 774 F.2d 1495, 1504 (11th Cir. 1985) *cert. denied*. 476 U.S. 1115 (1986). As to the allegation that Governor Riley issued an order, he would be entitled to the previously argued immunity and to executive immunity.

The alleged policy of the Warden concerning lockdowns and controlled inmate movements is proper in any event and they are entitled to judicial deference. As the Supreme Court has stated, federal courts "ought to afford appropriate deference and flexibility to state officials trying to manage a volatile (prison) environment. (citations omitted) Such flexibility is especially warranted in the fine-tuning of the ordinary incidents of prison life, a common subject of prisoner claims since *Hewitt*." *Sandin v. Conner* 515 US 472 at 482-483 (1995)

## CONCLUSION

There are no genuine issues of material fact, and the Defendants are entitled to judgment as a matter of law. WHEREFORE, the Defendants respectfully request that this Honorable Court dismiss the claims against them.

                                               RESPECTFULLY SUBMITTED,

                                               TROY KING
                                               ATTORNEY GENERAL


                                               /s/ Jeffery H. Long
                                               Jeffery H. Long (LON015)
                                               ASSISTANT ATTORNEY GENERAL

ADDRESS OF COUNSEL:
Office of the Attorney General
11 South Union Street
Montgomery, AL 36130
(334) 242-7300

**CERTIFICATE OF SERVICE**

I hereby certify that I have, this the 13th day of March, 2006, electronically filed the foregoing with the Clerk of Court using the CM/ECF and served a copy of the foregoing upon the Plaintiff, by placing same in the United States Mail, postage prepaid and properly addressed as follows:

Brandon Moore, AIS 241446
Draper Correctional Facility
PO Box 1107
Elmore, AL 36025

/s/ Jeffery H. Long
Jeffery H. Long
ASSISTANT ATTORNEY GENERAL